*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN
# COURT OF APPEALS

MMH,

        Petitioner-Appellee,

v

SCC,

        Respondent-Appellant.

UNPUBLISHED
October 23, 2025
11:11 AM

No. 372696
Livingston Circuit Court
LC No. 24-059234-PH

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

Respondent moved the trial court to modify or terminate a personal-protection order (PPO). After a hearing, the trial court denied respondent's motion. On appeal, respondent argues that she did not receive sufficient due process, and she also challenges the firearm component of the PPO. Finding no reversible error, we affirm.

Petitioner filed a petition for a PPO against respondent in September 2024. Petitioner asserted that she and her husband had a cabin in an association in which respondent also had a cabin. According to petitioner, respondent threatened to ruin petitioner's and her husband's lives. For four months, respondent sent petitioner "many" text messages, an email to petitioner's work email address, a letter to petitioner's home address, and messages to petitioner on Facebook. Petitioner did not answer respondent's messages, and she blocked respondent's number, but respondent sent messages from other phone numbers, including five separate phone numbers over two days. With her petition, petitioner included text messages from respondent and a picture of the letter that respondent sent. The trial court issued the PPO, prohibiting respondent from stalking petitioner, which included a prohibition from "purchasing or possessing a firearm".

Respondent moved to modify or terminate the PPO, denying that she had ever threatened petitioner. According to respondent, petitioner never indicated that she did not wish to be contacted, and petitioner had provided respondent with her work email address for nonwork purposes in 2021. According to respondent, she was contacting petitioner because she was having an affair with petitioner's husband and decided to tell petitioner about it.

The trial court held a hearing on respondent's motion and swore in petitioner and respondent. The trial court went through the petition, and petitioner confirmed that the information was true. The trial court reviewed the messages that petitioner submitted, including screen shots of conversations between respondent and petitioner's husband that respondent sent to petitioner. At one point, when the trial court expressed confusion about who was speaking in the messages, respondent stated that it was her message to petitioner's husband in the screenshot. Petitioner stated that she included the messages that she could recover, but she had deleted most of the messages.

When the trial court asked petitioner if she had told the trial court everything that she wanted to, petitioner stated that it was her understanding that respondent was "contesting the PPO primarily" because of her employment. The PPO restricted respondent from possessing firearms, but respondent had told petitioner's husband that the restriction would impact her employment with FedEx because she sometimes delivered firearms. Petitioner stated, "I don't want her to not work, of course, I would want her to have—to be able to work, provide for her family." Petitioner requested "that the rest of the PPO should remain exactly the same. But, if we need to lift the firearm so that she can deliver guns." The trial court stated that it was "not going to do that" because a delivery person did not know what she was delivering because the items "come in boxes."

Next, the trial court asked respondent what she would like to tell the court and specifically asked respondent why she would send the harassing messages, to which respondent answered that she had not "heard back" from petitioner, and she had "been in [petitioner's] shoes". The trial court asked respondent if she had "any other defense" and why she would send the messages. Respondent denied being happy about upsetting petitioner, but respondent "would want to be told" if someone was having an affair with her husband. The trial court asked respondent for other reasons for her behavior. Respondent stated that she was not sure if petitioner's husband was intercepting the messages, and petitioner could have told respondent to stop messaging her.

As to the firearm restriction, respondent informed the trial court that she and her children hunted and ate venison. Respondent explained that "having no firearms [was] going to affect how [she fed her] family." Respondent also denied threatening petitioner. Respondent, however, acknowledged sending the messages, including the message to petitioner's work email address. Respondent stated that she sent the messages so that petitioner would have the information, and respondent "never knew if [petitioner] was getting" the messages.

The trial court stated that it would not terminate the PPO and that respondent could have no contact with respondent. The trial court asked respondent if she had any other witnesses, and respondent stated, "I can prove that I was never lying." Respondent stated that she did not bring any witnesses. The trial court asked again if respondent had any other witnesses, and respondent answered that she did not have any witnesses. The trial court denied respondent's motion.

Respondent now appeals.

First, respondent argues that the trial court denied respondent due process by not permitting respondent to cross-examine petitioner. Respondent did not request to cross-examine petitioner during the hearing. Although this issue is, accordingly, unpreserved, we review unpreserved issues

in PPO proceedings for plain error affecting substantial rights. See *HMM v JS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367586), p 4. To demonstrate plain error, respondent must show that an error occurred, the error was clear or obvious, and the error affected substantial rights. *Id*.

"Due-process protections apply to proceedings on a motion to terminate a PPO." *Id*. This includes "an opportunity for the respondent to present evidence." *JLS v HRS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368375); slip op at 5. "[A] party must be given the chance to know and respond to the evidence." *HMM*, ___ Mich App at ___; slip op at 5 (cleaned up).

Respondent relies, in large part, on this Court's decision in *HMM* to argue that her right to cross-examine petitioner was a matter of due process. In that case, we held that the trial court erred by depriving the respondent of his opportunity to cross-examine the petitioner. *Id*. at ___; slip op at 6. The present case, however, significantly differs from that of *HMM*, in which the respondent's counsel was questioning the petitioner, and the trial court prevented the questioning from continuing. See *id*. at ___; slip op at 2-3. Further, the petitioner's allegations were vague, and the respondent denied them. *Id*. at ___; slip op at 2, 7. Here, the trial court asked repeatedly if respondent had witnesses or evidence to present, and respondent provided some information, but stated that she did not have witnesses. Respondent did not ask any questions of or about petitioner. Although it is true, as respondent argues on appeal, that she was unrepresented at the hearing, the trial court provided her with the opportunity to present evidence in her defense.

Crucially, although she denies having threatened petitioner, respondent does not deny that she sent petitioner the messages. Instead, respondent stated that she contacted petitioner because she thought that petitioner would want to know of the affair. Respondent has not articulated what questions she would have asked petitioner that could have changed the outcome of the proceedings. In *JLS*, ___ Mich App at ___; slip op at 5, the trial court denied the respondent the opportunity to present evidence contradicting the petitioner's evidence, but respondent in this case was given the opportunity and did not take it. The trial court did not deny respondent due process, and therefore there was no error, let alone plain error.

For her second and last claim, respondent argues that the trial court abused its discretion by refusing to lift the firearm restriction. A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017). MCL 600.2950a(26) provides that, when issuing a PPO, a trial court may restrain the respondent from "[p]urchasing or possessing a firearm." As respondent acknowledges on appeal, this provision permits a trial court to restrain an individual from purchasing or possessing a firearm. It was not outside the range of principled outcomes for the trial court to prohibit respondent from possessing firearms after she sent a significant number of offensive messages to petitioner over several months, resulting in petitioner fearing respondent.

Affirmed.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock